Miller and Company, Inc., a timber buying and cutting company, appeals from a judgment, based upon a Rule 53, A.R.Civ.P., master's report, awarding the landowners $29,273.68 on their claim against Miller alleging breach of contract in the cutting of timber on Parker's Island in Elmore County.
The landowners' December 27, 1976, contract with Miller for the sale of the timber stipulated that no timber was to be cut "within 150 feet of the river bank" and that Miller, in cutting and removing trees, was to do "as little damage as possible to the property of the sellers and improvements thereon." Miller agreed to the following liquidated damages: *Page 889 
 "1. For cutting any unmarked pine trees twelve inches or less in diameter at the stump, a sum equal to two times the stumpage value of $7.00 per cord.
 "2. For cutting any unmarked hardwood trees twelve inches or less in diameter at the stump, a sum equal to two times the stumpage value of $2.50 per cord.
 "3. For cutting any unmarked pine trees over twelve inches in diameter at the stump, a sum equal to two times the stumpage value of $90.00 per thousand board feet (Scribner Scale).
 "4. For cutting any unmarked hardwood trees over twelve inches in diameter at the stump, a sum equal to two times the stumpage value of $50.00 per thousand board feet (Doyle Scale)."
The landowners alleged that Miller cut unmarked trees on the property and cut trees within 150 feet of the river bank. The trial court ordered the case submitted to a special master on September 16, 1986, due to the "complicated" and "exceptional" issues and "specific problems in the area of timber cruises and the timber business." The appointed master was a forest manager and consultant from Mobile. The master reviewed depositions, exhibits, correspondence, and reports and made an on-site inspection of the property; he concluded that payments by Miller of $18,464.85 for the cutting of unmarked trees and $500 for damages to cultivated fields and roads constituted a fair damages settlement.
The trial court entered judgment on the report for $29,273.68, which included prejudgment interest calculated at the rate of six percent per year pursuant to Ala. Code 1975, §8-8-1. The issue for review is whether the trial court erred in denying Miller's post-judgment motion challenging the award of pre-judgment interest. We are guided by the principle that the trial court's interpretation and application of Ala. Code 1975, § 8-8-8 (interest on breach of contract) is a question of law, and, as such, on appeal is not entitled to any presumption of correctness. See Donnelly v. Doak, 346 So.2d 414 (Ala. 1977).
Section 8-8-8 states:
 "All contracts, express or implied, for the payment of money, or other thing, or for the performance of any act or duty bear interest from the day such money, or thing, estimating it at its money value, should have been paid, or such act, estimating the compensation therefor in money, performed."
This statute has been interpreted to mean that "in contract cases, where an amount is certain or can be made certain as to damages at the time of breach, the amount may be increased by the addition of legal interest from that time until recovery." C. Gamble, Alabama Law of Damages, § 8-3 (2d. ed. 1988); citingTennessee Coal, Iron R. Co. v. Jourdan, 221 Ala. 106,128 So. 132 (1930); Jefferson County v. City of Birmingham, 235 Ala. 199,178 So. 226 (1938); Roe v. Baggett Transportation Co.,326 F.2d 298 (5th Cir. 1963); and Belcher v. Birmingham Trust Nat'lBank, 488 F.2d 474 (5th Cir. 1973). And "[a]ll liquidated demands for a sum certain, fixed by agreement or otherwise, bear interest from the time the party becomes liable and bound to pay them." C. Gamble, supra, § 8-7; citing Ala. Code 1975, §8-8-8.
In sum, Miller argues that "the amount due Landowners in this case was anything but certain and the amount was clearly not known to Miller." However, in light of the damages provisions stipulated to in the contract by Miller, and the computations of the master in determining an appropriate damages award, we disagree. The master studied reports on unauthorized cutting submitted by the landowners and Miller. Acknowledging that the "plaintiffs' and defendant's timber volume scenarios have extreme differences in the estimate of initial volume, marked volume, cut volume, and remaining volume," the master concluded that "volumes calculated from a stump cruise can be reasonably accurate," and utilized the landowners' "cruise" of unmarked stumps to determine the number and volume of unmarked trees cut.
The master reported to the trial court that Miller cut 158,824 unmarked board feet, and 51,649 board feet within 150 feet of the river bank. Once the master *Page 890 
reached the factual conclusion from the evidence as to the volume of unmarked and unauthorized trees cut, the loss to the landowners could be fixed by a simple mathematical computation by reference to the liquidated damages provisions of the contract. See Lapeyrouse Grain Corp. v. Tallant, 439 So.2d 105
(Ala. 1983). Therefore, the amount of damages could be made certain at the time of breach. The trial court correctly increased the amount by the addition of legal interest from that time until recovery and properly denied Miller's post-judgment motion for relief.
AFFIRMED.
TORBERT, C.J., and SHORES, ADAMS and STEAGALL, JJ., concur.